**STATE of Iowa, Appellee,**

v.

**Brian Lee CLARKE, Appellant.**

No. 90–1029.

Supreme Court of Iowa.

Sept. 18, 1991.

David E. Grinde, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Denver D. Dillard, County Atty., and Harold Denton, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

A jury found Brian Clarke guilty of attempted murder and willful injury. *See* Iowa Code § 707.11 (1989) (defining attempted murder) and § 708.4 (1989) (defining willful injury).[1] On appeal from the judgment and sentences entered on the jury's verdict, Clarke asserts two errors. First, he claims that willful injury is a lesser-included offense of attempted murder, and thus his conviction for both crimes violates the double jeopardy clause of the United States Constitution. Second, he argues that the record is insufficient to support a conviction for either crime. Finding no merit in either argument, we affirm the judgment and sentence of the district court.

Clarke's convictions stem from an incident in December 1989 in which he shot his paramour's husband four times with a .38 caliber revolver. The victim was seriously injured but not killed. The district court sentenced Clarke to concurrent prison terms of twenty-five years for the attempted murder conviction and ten years for the willful injury conviction. Further facts will be detailed as they pertain to the issues on appeal.

I. *Claim of double jeopardy.* Clarke asserts that the court erred by convicting him of two separate crimes grounded in the same proof. He theorizes that willful injury is a lesser-included offense of attempted murder, and thus conviction for both crimes violates the double jeopardy clause of the fifth amendment to the United States Constitution. U.S. Const. amend. V; *see State v. Gowins,* 211 N.W.2d 302, 303 (Iowa 1973) (fifth amendment applicable to state prosecution). Because Clarke alleges the violation of a constitutional safeguard, our appellate review is de novo. *State v. Huss,* 430 N.W.2d 621, 623 (Iowa 1988).

■ It is well-settled that the double jeopardy clause protects defendants against multiple punishments for the same offense. *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322, 331 (1989). Thus, if one crime is a lesser-included offense of another, and a defendant is convicted of both crimes, the double jeopardy clause may be violated. *State v. Jeffries,* 430 N.W.2d 728, 734 (Iowa 1988). Problems of double jeopardy do not arise, however, if the crimes involved are sufficiently distinct that dual conviction does not duplicate the defendant's punishment. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

■ We begin our analysis by applying the *Blockburger* legal elements test reaffirmed by this court in *State v. Jeffries,* 430 N.W.2d at 730. Under this standard, willful injury has been held by our court of appeals *not* to constitute a lesser-included offense of attempted murder. *State v. Adcock,* 426 N.W.2d 639, 640 (Iowa App.1988). The distinguishing element is proof of serious injury, required for conviction of willful injury but not attempted murder. *Id.* Other jurisdictions are in accord, reasoning that assault crimes requiring an element of physical harm are not congruent with attempted murder laws which require proof

---

1. Iowa Code § 707.11 (1989) provides in part:
 **Attempt to commit murder.**
 A person commits a class "B" felony when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

 Iowa Code § 708.4 (1989) provides:
 **Willful injury.**
 Any person who does an act which is not justified and which is intended to cause and does cause serious injury to another commits a class "C" felony.

of intent to kill but no actual injury. *See, e.g., State v. Sharpe,* 195 Conn. 651, 654–56, 491 A.2d 345, 349 (1985); *State v. Whisonant,* 331 N.W.2d 766, 769 (Minn.1983); *State v. Ambuehl,* 145 Wis.2d 343, 425 N.W.2d 649, 657 (App.1988).

The rationale underlying these decisions is that "the court must look at the statutory definitions rather than the facts in the particular case to determine whether the lesser offense is necessarily included." *Whisonant,* 331 N.W.2d at 769. One source describes the general rule as follows:

> Where the same act or transaction constitutes a violation of two distinct provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not.... [T]he constitutional prohibition against double jeopardy is directed to the identity of the offense and not to the act.... If each statutory provision requires proof of a fact that the other does not, they are not the same, even though there may be a substantial overlap in the proof offered to establish the crimes.

21 Am.Jur.2d *Criminal Law* § 279, at 487–88 (1981).

It is this "overlap in the proof" that is really at the heart of defendant's argument. He argues that, even if willful injury is technically not a lesser-included offense of attempted murder under the legal elements test, the fact that the same proof is used to convict him of both crimes shows that he is being punished twice for the same offense. For the reasons that follow, we think defendant's argument lacks merit when applied to a single prosecution.

Iowa Rule of Criminal Procedure 6(1) provides, in pertinent part:

> *Multiple offenses.* Two or more public offenses which arose from the same transaction or occurrence ... may be alleged and prosecuted as separate counts in a single ... information ... unless, for good cause shown, the trial court in its discretion determines otherwise.

The rule is relevant to the present case because it dashes any suggestion that multiple charges may not stem from a single criminal transaction. What the legislature intended by "same transaction or occurrence" is further refined in Iowa Code section 701.9, which states: "No person shall be convicted of a public offense which is *necessarily* included in another public offense of which the person is convicted." (Emphasis added.) We regard the term "necessarily" as meaning the legislature intended an offense to be included only when it must be, in all circumstances, part of a greater offense. This is essentially the "impossibility test" sanctioned in *Jeffries,* 430 N.W.2d at 740, and *State v. McNitt,* 451 N.W.2d 824, 825 (Iowa 1990). This concept finds further support in Iowa Rule of Criminal Procedure 21(3) which allows the jury to find the defendant guilty of "any offense the commission of which is *necessarily* included in that with which the defendant is charged." Iowa R.Crim.P. 21(3) (emphasis added).

Beyond these clues to legislative intent, we are guided by considerations of the basic protections guaranteed by the double jeopardy clause. It is significant that Clarke's two convictions resulted from only one prosecution. This fact immediately distinguishes his case from the more typical double jeopardy situation in which a defendant is tried once, acquitted or convicted, and then prosecuted a second time for offenses arising from the same act. *See, e.g., Grady v. Corbin,* 495 U.S. 508, ——, 110 S.Ct. 2084, 2093–95, 109 L.Ed.2d 548, 565–66 (1990) (double jeopardy bars prosecution for vehicular homicide based on proof of identical conduct established in prior conviction for related traffic offense). Freedom from vexatious proceedings, which is the core value protected by the double jeopardy clause, is simply not a concern in the single prosecution context. *State v. Lonergan,* 16 Conn.App. 358, 377, 548 A.2d 718, 727 (1988), *aff'd,* 213 Conn. 74, 92–93, 566 A.2d 677, 686 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990).

Viewing the present case in the light of this authority, we see nothing to prevent

the State from charging and convicting an individual for both attempting to murder and, at the same time, willfully injuring a victim. Application of the legal elements test plainly demonstrates that willful injury is not a lesser-included offense of attempted murder. No reason appears to depart from the legal elements test in the present case just because both offenses arise out of the same course of conduct by the defendant. Neither the opinions of the Supreme Court nor pertinent Iowa statutory law compels a contrary result in the context of a single criminal prosecution. No violation of the defendant's claimed rights under the double jeopardy clause occurred.

II. *Sufficiency of the evidence.* Clarke also asserts that the State provided insufficient evidence to support conviction of either offense. Specifically Clarke asserts inadequacy of proof of the intent element of each crime. To address this alleged error we must give a more thorough recitation of the facts.

 Clarke was romantically involved with Regina Herren. Regina was married at the time to Kevin Herren. Kevin is evidently a man of considerable size and physical strength. He is also prone to violence. He candidly admitted at trial that he physically abused Regina and damaged their mobile home by punching holes in the walls, throwing furniture, and destroying appliances.

Regina testified that Kevin had on occasion threatened to kill both her and himself. She confided in Clarke these fears of her husband. She warned Clarke never to engage Kevin in a fight, however, because he would be no match for her husband. Despite Clarke's knowledge of Kevin's violent nature, the record contains no evidence that Clarke ever spoke badly of Kevin or threatened him in any way.

The incident giving rise to this prosecution occurred on December 13, 1989. Clarke and Regina spent the early evening competing in a pool tournament at a local tavern. Regina went home around 9:30 while Clarke continued to drink and play pool with friends. Sometime later Regina called the tavern to let Clarke know she was home safely but that Kevin had left their trailer in a huff, annoyed at the time of her return. She did not invite Clarke to visit her. But Clarke testified that on his way home at midnight, he spontaneously decided to stop by her trailer.

When Clarke arrived at the trailer he confirmed that Kevin's car was not around, and then parked his own car some distance away. Before getting out of the car he stuck a .38 caliber revolver in his belt.

Clarke climbed the stairs leading to a small deck at the trailer's front door. Just then Kevin drove up in his car. There is conflicting evidence over what happened next. Clarke claims that he jumped off the deck to avoid being seen but as he did so the railing broke with a loud crack and he fell to the ground, injuring his knee and dropping the gun in the process. As Kevin walked towards the trailer and climbed the steps to the deck, Clarke claims he panicked, convinced Kevin was going to jump on him from above. Kevin, on the other hand, insists he saw no one on the deck but was aware of a figure lurking in the shadows. In any event, it is undisputed that Clarke fired two shots while Kevin stood on the deck.

One bullet hit Kevin directly in the chest and passed out his back. The second bullet hit him in his left cheekbone just below his left eye. Undaunted, Kevin leapt off the deck at Clarke. A struggle ensued. During the struggle, Clarke's gun discharged three more times. One shot hit Kevin in the hip; another struck him again in the head. Another bullet struck Kevin's van. By this time Regina and other neighbors were on the scene and separated the two men. Kevin, shot a total of four times at close range, collapsed soon after and was taken to the hospital. Clarke fled the scene but was arrested a short time later by local police. He was then charged with attempted murder and willful injury.

At trial Clarke presented several character witnesses who testified that he was nonviolent, easygoing, personable, friendly, and loving. A psychologist also testified on his behalf. Based on his evaluation, he found Clarke to be impulsive and imma-

ture. He also testified to his belief that in a stressful situation, Clarke's personality would demonstrate hysterical tendencies.

Clarke argues that the evidence, taken as a whole, was insufficient to support the jury's finding that he intended to seriously injure and kill Kevin. He maintains that he did not intend either result. He claims that he took his gun because he was scared of Kevin and shot him only out of panic and self-defense.

The scope of our review of jury verdicts is narrow. We must examine the evidence in the light most favorable to the verdict. *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988); *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). We are bound by the jury's verdict of guilty unless there is no substantial evidence in the record to support it or such finding is clearly against the weight of the evidence. *LaPointe*, 418 N.W.2d at 51. Substantial evidence means evidence which could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Barrett*, 445 N.W.2d 749, 753–54 (Iowa 1989). We examine the whole record and accept all legitimate inferences permitted by the evidence to support the verdict. *State v. Newman*, 326 N.W.2d 788, 790–91 (Iowa 1982).

Intent, being a mental condition, must ordinarily be inferred from external circumstances. *State v. Lass*, 228 N.W.2d 758, 766 (Iowa 1975). The State concedes that the only evidence of intent in this record is circumstantial. It is well established, however, that "direct and circumstantial evidence are equally probative." Iowa R.App.P. 14(f)(16). We have often stated that circumstantial evidence may be considered by the jury in determining whether a motive to kill may be inferred. *State v. Freie*, 335 N.W.2d 169, 172 (Iowa 1983). Circumstantial evidence is particularly valuable when proving a mental state like intent which is seldom susceptible to proof by direct evidence. *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985). Use of such circumstantial evidence is limited only by the rule that, like direct evidence, it must "raise a fair inference of guilt; it

must do more than create speculation, suspicion, or conjecture." *State v. Blair*, 347 N.W.2d 416, 421 (Iowa 1984).

Given these standards and the evidence in the record, a reasonable jury could find that Clarke intended to seriously injure and kill Kevin Herren. Whether Clarke intentionally fired the shots in an attempt to kill Herren, or whether he was driven solely by panic or self-defense, are questions best left for the jury. While we have previously observed that signs of a struggle may bear on the intent element, *see State v. Hamilton*, 309 N.W.2d 471, 480 (Iowa 1981), Clarke's first two shots were fired before any struggle began. Although Clarke insists that "[t]he shots fired were not aimed at anyone or anything and were fired out of fear and panic," we note that both shots hit Herren squarely, one in the middle of his chest and the other in his face.

The jury was fully instructed that it could consider the reasonableness of Clarke's fear of Kevin, his testimony that he acted in panic and did not aim at Kevin, and all other subjective aspects of Clarke's state of mind at the time of the shooting. Despite being informed of these mitigating factors, the jury concluded that the circumstantial evidence sufficiently proved Clarke's intent beyond a reasonable doubt. Our review of the evidence convinces us that sufficient evidence of Clarke's intent exists to support the jury's verdict. The judgment entered upon that verdict must be affirmed.

AFFIRMED.