**STATE of Iowa, Appellee,**

v.

**Regina S. AKRIGHT, Appellant.**

**No. 92–425.**

Court of Appeals of Iowa.

June 29, 1993.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., William E. Davis, County Atty., and James D. Hoffman, Asst. County Atty., for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

The defendant, Regina S. Akright, appeals her conviction, following a bench trial, of first-degree murder in violation of Iowa Code section 707.2(2) (1991). She contends her trial counsel rendered ineffective assistance by failing to object to improper expert opinion testimony on ultimate fact questions.

She further contends the district court erred in: (1) denying her motions for judgment of acquittal, and (2) refusing to suppress incriminating statements on the grounds that she was incapable of knowingly and voluntarily waiving her *Miranda* rights.

The State charged Akright with first-degree murder in violation of section 707.2(2) for allegedly causing the death of her five-year-old son, Mark. The State's charges were based, alternatively, on premeditated murder or felony murder predicated upon felonious child endangerment. Akright filed a motion to suppress inculpatory statements she made after her arrest, claiming she was incapable of making a knowing and voluntary waiver of her *Miranda* rights. The district court denied the motion.

Akright's case proceeded to a bench trial. Evidence at trial indicated Akright had eight children, including Mark. Mark suffered from cerebral palsy, mixed quadriplegia, microcephaly, profound mental retardation, a seizure disorder, and visual deficit. Prior to Mark's death, Akright had been able to meet Mark's needs either on her own or through the intervention of others. Regina allegedly isolated Mark from others prior to his death. Mark died of starvation on May 11, 1991. Mark's estimated weight at the time of his death was fourteen pounds.

State Medical Examiner Thomas Bennett testified regarding the condition of Mark's body at the time of his death. Defense counsel failed to object to the following exchange between the prosecutor and Dr. Bennett:

Q. And from your examination and from these observations were you able to determine and to give us an opinion as to the cause of death? A. Yes, sir.

Q. What was that? A. My opinion is Mark died directly as a result of starvation, *and that was in the form of child neglect.* (Emphasis supplied.)

Dr. Michael O'Hara testified on Akright's behalf concerning his conclusions based upon a battery of tests he had given her. Dr. O'Hara testified Akright was suffering from a major depression which interfered with her ability to think and make decisions. He tes-

tified she had an I.Q. of 82, which is in the twelfth percentile, and had a verbal I.Q. in the fourth percentile. He opined that Akright lacked the capacity to form a specific intent to commit a crime. The district court sustained the State's objection to Dr. O'Hara's testimony that Akright did not form a specific intent to kill Mark.

On rebuttal, Dr. Michael Taylor testified that while Akright was suffering from depression, she did have the ability to form a specific intent. Defense counsel failed to object to Dr. Taylor's testimony that he thought Akright's apparent ability to satisfy her own and her other children's needs "is consistent with (his) opinion that she wanted to have Mark be dead and got that job done."

The district court denied Akright's motions for judgment of acquittal. The court found Akright guilty of first-degree felony murder predicated upon felonious child endangerment. The district court sentenced Akright to life in prison. Akright appeals, and we affirm.

■ Because Akright asserts violation of her Sixth–Amendment right to effective assistance of counsel, our standard of review is to conduct our own evaluation of the totality of the circumstances. This is the equivalent of de novo review. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). Our ultimate concern in claims of ineffective assistance is with the "fundamental fairness of the proceeding whose result is being challenged." *State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984)).

Ineffective assistance is measured by whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93; *see Schertz v. State,* 380 N.W.2d 404, 408 (Iowa 1985). The record must show two conditions before a claim of ineffective assistance is satisfied: "It must be shown that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa

1983) (quoting *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981).

■ Akright complains her trial counsel was ineffective for failing to object to a statement made by Dr. Thomas Bennett, State Medical Examiner, and failing to object to testimony from Dr. Michael Taylor, a psychiatrist who testified during rebuttal. Dr. Bennett testified that he did the autopsy on Mark. He described Mark's body, described the autopsy, and rendered his opinion regarding the cause of Mark's death. Dr. Bennett stated that Mark died directly from starvation and that Mark was neglected prior to his death:

> My opinion Mark died directly as a result of starvation, *and that was in the form of child neglect.* (Emphasis added.)

Akright contends the highlighted portion of this statement violates the rule in *State v. Myers*, 382 N.W.2d 91 (Iowa 1986), that expert opinion testimony is not admissible if it essentially passes on the guilt or innocence of the defendant. Akright argues Dr. Bennett's expert opinion goes beyond merely aiding the fact finder in understanding the evidence and invades the exclusive domain of the fact finder by commenting on Akright's guilt. As a result, Akright claims counsel failed to perform a material duty by failing to object to this expert opinion testimony.

We find this contention to be without merit. Dr. Bennett did not testify as to the guilt of any person, namely Akright. Nor did he state that Mark was a victim of "felony child endangerment," the felony underlying Akright's felony-murder conviction. Dr. Bennett merely stated that Mark had been neglected, had not received proper attention in light of his condition, and then explained the medical evidence to support his conclusion.

Iowa Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." In *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 5 N.W.2d 646 (1942), the court announced Iowa's liberal view of the admissibility of expert opinion testimony which has been consistently followed since. We do not find Dr. Bennett's statement to constitute a *Myers* violation and, consequently, we reject Akright's contention that the failure to object to this expert opinion testimony constituted a failure to perform an essential duty.

■ Similarly, we reject the defendant's contention that counsel rendered ineffective assistance by failing to object to Dr. Taylor's expert opinion testimony regarding Akright's specific intent to commit a crime. Akright claims counsel should have objected to the following testimony of Dr. Taylor:

> Q. I have a question. Is there any significance to your inquiry into the legal issue here that the harm in our case essentially occurred only to one person as opposed to herself and others? Is there anything significant about that from your analysis? A. I think it's consistent with my opinion that she wanted to have Mark be dead and got that job done.

We conclude that no prejudice resulted to defendant from the purported failure to object to this testimony. Prejudice is defined as "a reasonable probability that but for the alleged breach of duty, the outcome would have been different." *State v. Kane*, 436 N.W.2d 624, 627 (Iowa 1989). Having carefully reviewed the record, no reasonable probability exists that the trial court would have acted differently if an objection to this testimony had been made. The trial court clearly stated it would decide whether the defendant possessed the necessary intent. The court stated that expert testimony concerning the capacity to form intent would be considered, but that expert testimony regarding Akright's actual intent would not be considered.

The court emphasized this view in its findings of fact in which the court relied not only on expert testimony, but on the defendant's own conduct as well. Specifically, the court focused on the defendant's conduct regarding her care for Mark prior to the months leading to Mark's death and on the defendant's lack of care and deliberate deception of others during the months immediately preceding Mark's death. Since no prejudice result-

ed from counsel's failure to object to Dr. Taylor's expert opinion testimony, we find the defendant's ineffective assistance claim to be without merit.

■ Next, Akright contends that insufficient evidence exists in the record to support the trial court's finding that Akright participated in felony child endangerment, the forcible felony upon which the conviction of felony-murder was based. Our standard of review on this issue is whether substantial evidence exists in the record to support the defendant's conviction. "Substantial evidence means evidence which could convince a rational trier of fact that defendant is guilty of the crime charged beyond a reasonable doubt." *State v. Clarke*, 475 N.W.2d 193, 197 (Iowa 1991). In determining whether this standard is met, the evidence is examined in the light most favorable to the verdict. *Id.* In examining the record, all legitimate inferences permitted by the evidence that support the verdict are accepted. *Id.*

■ Our review of the record in light of these guiding principles leads to our conclusion that the trial court's finding of felony child endangerment is supported by substantial evidence. Akright cites Iowa Code section 726.6(1)(d) (1991) (child endangerment) and argues her actions were not "willful." She claims she was unable to provide for the child due to the facts that she functions intellectually in the bottom twelve percent of the population and that her verbal I.Q. falls within the bottom four percent of the population. We are not persuaded by this argument.

The record indicates that Akright successfully surmounted this problem for the first five years of Mark's life. Most significantly, even though evidence exists indicating Mark had difficulty eating, the evidence substantially demonstrated that Mark was not fed, not cleaned, not exercised, and not cared for over an extended period of time. In addition, the evidence reveals Mark was left in his room, while others were barred from seeing him or attending to his needs. The record further indicates that Mark's death was not a result of any of the severe medical problems he suffered; Mark was ignored, unattended, and he eventually starved to death.

■ Finally, Akright argues the district court erred in failing to suppress her confession, allegedly taken when she was incapable of giving a knowing and voluntary waiver of her *Miranda* rights. Since this issue raises a constitutional provision involving Fifth-Amendment principles relating to the use of a defendant's confession against the defendant, our review is a de novo evaluation of the evidence, focusing on the totality of the circumstances. The State has the burden to show by a preponderance of the evidence that a defendant's statements were made pursuant to a knowing and valid waiver of her rights. *State v. Reid*, 394 N.W.2d 399, 402 (Iowa 1986).

■ A defendant may waive her *Miranda* rights provided the waiver is made voluntarily, knowingly, and intelligently. This inquiry has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986); *see also State v. Lamp*, 322 N.W.2d 48, 54 (Iowa 1982).

■ In the present case, the defendant does not claim, nor would the record support a claim, that her confession was the result of coercion or intimidation. Consequently, the defendant's claim that her waiver of rights was not knowing and voluntary is premised on the second inquiry, her awareness. The court relies on a wide range of factors in determining whether a defendant's waiver of rights was voluntary, including defendant's age, defendant's prior experience in the criminal justice system, the influence of drugs, the issuance of *Miranda* warnings, the defendant's mental state, the use of deception, the defendant's ability to understand the questions and respond to them, and the

length of time the defendant was detained and interrogated. *State v. Payton*, 481 N.W.2d 325, 329 (Iowa 1992).

On appeal, Akright relies on the fact that she possessed a low level of intelligence and that she suffered from depression. We find that the circumstances surrounding Akright's questioning indicate that she knowingly and intelligently waived her right to remain silent. The defendant was informed of her *Miranda* rights. She acknowledged that she understood those rights. She did not request an attorney, and she expressed a willingness to discuss Mark's death. The record reflects that Akright appeared calm and answered the questions she was asked with normal, intelligible answers. She stated she was responsible for Mark's death and that she hid his condition from others to prevent losing her other children.

Furthermore, we do not believe that Akright's purported depression impaired her ability to comprehend the consequences of her actions. Akright repeatedly exercised carefully-planned, deceptive actions to conceal Mark from others. In addition, the record indicates that she was capable of planning many aspects of her life, including arranging a hair permanent for herself one week prior to Mark's death and arranging to visit a friend's bar the night Mark died. Dr. Taylor's testimony further supports the conclusion that the defendant was able to plan and comprehend her actions. For the reasons stated above, we affirm the trial court's denial of defendant's motion to suppress.

The defendant's conviction of felony-murder predicated on felony child endangerment is affirmed.

**AFFIRMED.**