STATE of IOWA, Appellee,

v.

Gary Lynn BUCK, Appellant.

No. 92–1176.

Supreme Court of Iowa.

Jan. 19, 1994.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Thomas J. Ferguson, County Atty.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant Gary Lynn Buck appeals his conviction for the first degree murder of the three-year-old son of his live-in girlfriend. He contends (1) that the trial court erred in allowing the State to introduce expert testimony regarding his sanity in its case in chief, and (2) that he received ineffective assistance of counsel. We affirm.

I. *Background facts and proceedings.* Gary Lynn Buck intentionally shot his live-in girlfriend's three-year-old son in the forehead with a pellet gun while the girlfriend was absent. Believing that the child would not recover, Buck cut the boy's throat, placed the body in a plastic garbage bag, and hid the body in the basement of the house in which they lived in Evansdale, Iowa. Buck then dressed the boy's two sisters, who had not witnessed the killing, and went with them outside under the pretext that they needed to search for their absent brother. The Ev-

ansdale police found the boy's body that same day and arrested Buck. He waived his *Miranda* rights and confessed to the killing. Buck was charged with murder in the first degree. *See* Iowa Code §§ 707.1–.2 (1991).

Buck contemplated asserting a defense of insanity or diminished responsibility. At defendant's request, two psychiatrists examined him at state expense. After the examinations, Buck decided that he would probably want to rely only on lay testimony in support of his defense. He moved for an adjudication of law points asking whether the State would be allowed to have the defendant examined by its own expert if he relied solely on lay witnesses in support of his defenses of insanity or diminished capacity. The State moved to have one of its own psychiatrists examine Buck. After a hearing, the district court allowed the State to have its own expert examine him. *See* Iowa R.Crim.P. 10(11)(b)(2).

At the pretrial conference, the parties jointly moved to continue the trial and the defense attorney informed the court that Buck was waiving his right to trial by jury. The court asked Buck if he personally and voluntarily waived his right to a jury trial and sought a bench trial. Buck responded, "Yes." Later that same day, Buck filed a written notice of intent to rely on the defenses of insanity and diminished responsibility. With it was included a notice of Buck's waiver of his right to a jury trial, signed by his counsel only. Before the trial began, Buck stated to the court on the record that he still wanted a bench trial.

At trial, the State presented the testimony of Buck's girlfriend, who was the mother of the victim, and several law enforcement officers. Each witness testified, without objection, about Buck's demeanor and mental and emotional state on the day of the killing. Defense counsel cross-examined the witness about these observations. The State then called Dr. James Dennert, a psychiatrist who had examined Buck. The court overruled Buck's objection to the psychiatrist's testimony. Dr. Dennert testified that Buck had an antisocial personality disorder and that on the day of the killing Buck understood the

nature and quality of his acts, could distinguish right from wrong, and could form a specific intent to kill.

At the close of the State's case, Buck moved for judgment of acquittal, contending (1) that a rational trier of fact could not find that the defendant had failed to carry his burden of asserting his insanity, and (2) that the State had not carried its burden of showing the defendant had acted willfully, deliberately, with premeditation, and with the specific intent to kill. The court overruled the motion.

Buck's mother testified for the defense that Buck wore T-shirts bearing satanic images, listened to music that referred to Satan, possessed a replica of a human skull on which he burned a candle, burned black candles, called himself Abaddon (meaning "destroyer" or "angel from hell" according to *Revelations* 9:11), had one time hissed at her like a snake, and had told her he felt like two different people.

At the close of all evidence, defendant renewed his motion for judgment of acquittal. The court overruled the motion.

The district court found Buck guilty of first degree murder. The court also concluded that Buck had failed to establish his defense of insanity or diminished responsibility at the time of the offense. Judgment of conviction was entered and sentence pronounced on defendant.

Buck appeals. He contends the district court erred in allowing the State to present expert testimony regarding his defenses of insanity and diminished responsibility. He says the State's expert testimony was irrelevant in light of his exclusive reliance on lay testimony for these defenses. Buck also contends he was denied effective assistance of counsel because his trial counsel failed to preserve any claim that his waiver of a jury trial was not voluntary or intelligent.

II. *State's use of expert testimony.* After giving written notice of his intent to rely on the defenses of insanity and diminished responsibility, defendant then had the burden of proof to prove his insanity by a preponderance of the evidence. Iowa Code § 701.4; Iowa R.Crim.P. 10(11)(b)(1); *see State v.*

*James,* 393 N.W.2d 465, 466–67 (Iowa 1986) (upholding constitutionality of placing such burden on defendant), *appeal dismissed,* 481 U.S. 1009, 107 S.Ct. 1881, 95 L.Ed.2d 489 (1987).

Buck argues that the trial court erred in admitting the State's expert psychiatric testimony concerning his mental condition. Specifically, he contends that the testimony, which the State put on during its case in chief, was irrelevant because it did not serve to rebut the defendant's evidence. Buck also contends that the expert evidence was prejudicial because he did not present expert testimony of his own and because the introduction of the expert testimony in the State's case in chief precluded him from withdrawing the defense. We reject these claims.

■ We will reverse the trial court's admission of evidence over a relevancy objection only upon a showing that the trial court abused its discretion in so doing. *State v. Brewer,* 247 N.W.2d 205, 214 (Iowa 1976).

Iowa rule of evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Iowa R.Evid. 402, 403.

■ To be relevant under rule 402, evidence must be of a material fact ("of consequence") and be probative. A fact is material if it helps to prove a proposition in issue. The question of a defendant's insanity or diminished responsibility is material ("drawn in issue") when the pleadings raise that question. *See State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974).

■ Here, Buck's notice of intent to rely on the defenses of insanity and diminished responsibility, a pleading, raised the question of his mental condition and put it in issue. At the close of the State's case and of all evidence, defendant moved for judgment of acquittal on the basis that defendant had proved his insanity defense as a matter of

law. Thus, the expert testimony offered by the State during its case in chief was material. This testimony also had a tendency to make the fact of Buck's sanity more probable than without the testimony. Under these definitions, therefore, the State's expert testimony met the legal requirements of relevance.

We agree with Buck that the expert testimony was prejudicial to Buck's insanity defense. But the question here is whether it was unfairly prejudicial. *See State v. Thornton*, 498 N.W.2d 670, 675 (Iowa 1993). We believe it was not. Contrary to Buck's argument, nothing precluded him from withdrawing his defenses of insanity and diminished responsibility. If Buck had withdrawn those defenses, his case certainly would have been weakened, but it would not have been any weaker than if he had never raised the defense in the first place.

We note that the usual procedure is for the defendant to present evidence bearing on the insanity defense during defendant's case in chief. The State would then present its expert evidence during rebuttal. We find no reversible error, however, under the objections made by defendant and the record presented here.

III. *Ineffective assistance of counsel claim.* Buck also contends that his trial counsel was ineffective because counsel failed to preserve Buck's present claim that he had not voluntarily and intelligently waived his right to a jury trial.

■ We generally reserve ineffective assistance of counsel claims for postconviction proceedings. *State v. Ueding*, 400 N.W.2d 550, 553 (Iowa 1987). We will resolve the claim on direct appeal, however, when the record adequately presents the issues. *Id.* We believe that this is such a case.

■ To establish a claim of ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence (1) that counsel failed to perform an essential duty and (2) that prejudice thereby resulted. *State v. Constable*, 505 N.W.2d 473, 479 (Iowa 1993). To prove the first prong, the defendant must overcome the presumption that counsel was competent and show that

counsel's performance was not within the range of normal competency. *Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989). To prove the second prong, the defendant must show counsel's failure worked to the defendant's actual and substantial disadvantage so that a reasonable possibility exists that but for counsel's error the trial result would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)).

■ Under Iowa rule of criminal procedure 16(1), cases required to be tried by jury, such as the present one, "shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record...." This right is absolute. *State v. Lawrence*, 344 N.W.2d 227, 229 (Iowa 1984). A defendant's waiver of a jury trial must be a voluntary, knowing, and intelligent act, done with awareness of the relevant circumstances and likely consequences. *State v. Johnson*, 318 N.W.2d 417, 426 (Iowa 1982), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95.

■ The record in this case contains overwhelming evidence that Buck made a voluntary, knowing, and intelligent waiver of his right to trial by jury. Buck's attorney filed a written notice with the court of his waiver, and Buck twice told the court himself in recorded statements that he understood the nature of the waiver and agreed to it. Because the evidence here firmly establishes Buck's voluntary waiver of a jury trial, his trial counsel had no duty to preserve the issue for appeal.

■ Moreover, even if counsel had a duty to preserve the waiver issue for appeal, we find no prejudice resulted. There was no reasonable possibility that a jury in this case would have rendered any verdict other than first degree murder. The evidence against defendant was compelling. He confessed to slashing the throat of a three-year-old boy willfully, deliberately, premeditatedly, and with a specific intent to kill. Conversely, the evidence of his insanity or diminished responsibility—his sole defenses—consisted only of lay observations of an interest in the

occult and a few episodes of antisocial behavior.

There was no evidence that he lacked the mental capacity to understand the nature and quality of his acts or to tell right from wrong. There was also no evidence that defendant did not have the mental capacity to make a voluntary, knowing, and intelligent waiver of his right to a jury trial.

There is no merit to this assignment of error and nothing to preserve for postconviction proceedings.

IV. *Disposition.* Finding no merit in any of Buck's contentions, we affirm the trial court's judgment in all respects.

**AFFIRMED.**