**STATE of Iowa, Appellee,**

v.

**Douglas W. HASKINS, Appellant.**

**No. 96–0345.**

Court of Appeals of Iowa.

Sept. 24, 1997.

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, William E. Davis, County Attorney, and Realiff H. Ottesen, Assistant County Attorney, for appellee.

Heard by HABHAB, C.J., and CADY and STREIT, JJ., but decided by SACKETT, P.J., and CADY, HUITINK, STREIT, VOGEL, and MAHAN, JJ.

VOGEL, Judge.

Douglas Haskins appeals from judgment and sentences entered, following a jury trial, for attempted murder, domestic abuse assault, and reckless use of a firearm. At trial, the State alleged Douglas shot his wife during an argument. Douglas admitted he shot his wife, but claimed the shooting was accidental. On appeal, Douglas argues: (1) the trial court should have granted his motion for recusal of the trial judge; (2) the trial court should have excluded evidence he assaulted his wife a year before the shooting; and (3) his trial counsel was ineffective for failing to object to the imposition of consecutive sentences as a violation of double jeopardy.

Douglas and his wife Lydia were married in April 1993. They have been having an ongoing argument over their finances. On August 8, 1995, Douglas returned home early from work because he was not feeling well. When Lydia returned home and asked Douglas why he was not at work, an argument ensued. Douglas told Lydia he filed for divorce, when in fact he had not. He began to leave and Lydia followed him outside, hitting his truck with her hand. Douglas stopped, kicked out a tail light on Lydia's car, and then drove off.

Lydia gathered her purse and car keys and then left in an attempt to locate Douglas. While Lydia was gone, Douglas returned home, parked his truck in the garage, and disconnected the garage door opener to prevent entry by Lydia. He entered the house and locked the front and back doors, including the outer screen doors on both entrances. When Lydia tried to enter the house, Douglas told her to leave and said he was not going to let her in. Lydia cut the screen on the back door, entered the house, and went to the bedroom.

In the bedroom, she discovered Douglas was pulling her clothes out of the closet and putting them on the bed. He told her he owned the house and she had to leave. Lydia resisted. Douglas then reached up and retrieved a loaded revolver from a shelf in the closet. In his videotaped statement, which was played for the jury, he said he did so as a scare tactic to encourage her to leave. Lydia said she would not leave and the argument continued as they moved into the living room. At some point between the bedroom and living room, Douglas removed the gun from its holster.

Once in the living room, Douglas pushed Lydia down on the couch. At one point, he held the gun to her head and said, "Get out of the house, bitch." Lydia testified they continued to struggle and her arm hit the gun. She heard the gun discharge and saw her arm was bleeding. Lydia ran out of the house screaming. Douglas ran after her and carried her back into the house, where she phoned 911. Lydia then went back outside to wait for help.

Sergeant Jeffrey Yates arrived and placed Douglas in custody. Douglas told Yates he was struggling with Lydia when the gun "went off." Lydia was transported to the hospital where physicians diagnosed a defensive wound to her arm where the bullet passed through and a wound to the chest where the bullet entered and collapsed her lung.

The State charged Douglas with attempted murder, in violation of Iowa Code section 707.11; willful injury, Iowa Code section 708.4; and domestic abuse assault, Iowa Code section 708.2A(2)(c). The State later amended the trial information to add a count of reckless use of a firearm, in violation of section 724.30(1). Pursuant to a plea agreement reached by the State and Douglas, he would plead guilty to the charges of domestic abuse assault and reckless use of a firearm. The court rejected the plea agreement stating:

> The Court is aware of the fact that the Reckless Use of a Firearm would be probably a class "C" felony, non-forcible, and— the Court has reviewed the minutes of testimony in this matter, and I will state,

on the record, that I am not going to accept the plea agreement which has been prepared today, because I don't feel that it's appropriate, given the circumstances contained in the minutes of testimony and the injury which was sustained, and the way in which it was sustained under the minutes of testimony.

Following the denial of the plea agreement, a headline in the *Quad City Times* read, "Judge Stands Tough On Shooter: She refuses to plea bargain with Bettendorf man who admits to injuring wife." The article reported, "a Scott County judge who is active in efforts to thwart domestic abuse threw out a plea bargain Wednesday for a Bettendorf man who shot his pregnant wife." The article noted the judge sat on a committee that targeted the prevention of domestic abuse and promoted better handling of domestic abuse cases within the court system. The article also noted the judge practiced primarily in family law as an attorney before her appointment to the bench.

When Douglas's trial counsel learned the same judge was assigned to the trial, he moved for a change of judge. He argued the judge's rejection of the plea agreement and the publicity that followed would cause a reasonable person to question the judge's impartiality. The court denied the motion, reasoning rejection of a plea agreement is not significant because it is a routine practice. The judge explained her activities in the area of domestic abuse were not intended to advance the cause of victims, but were designed to achieve meaningful case processing. She emphasized her involvement with a domestic abuse coalition was pursuant to her appointment by the Chief Judge of the Seventh Judicial District, as mandated by order of the Chief Justice of the Iowa Supreme Court. Finally, the court reasoned because the jury would act as fact finder, the court would follow the rules of evidence and criminal procedure to allow the jury to perform its duty to find the facts and apply the law.

The case proceeded to trial. Douglas conceded in his opening statement he shot Lydia, but took the position it was accidental. The State examined Lydia, who explained the circumstances surrounding the shooting.

On cross-examination, she attempted to testify Douglas's shooting was an accident, but the court sustained the State's objection to this line of questioning. The State presented evidence the muzzle of the gun was between eight and fourteen inches from Lydia's arm when it fired, and eleven and one-half pounds of pressure on the trigger were required to fire the gun.

Over Douglas's objection, the State presented testimony of Ronald Fox, a friend of Douglas's next door neighbor. Fox testified approximately one year before the shooting he was working in his friend's garage when he heard a noise. He walked toward Douglas's garage to investigate and saw Douglas with his hand holding Lydia's hair and banging her head against a car. Fox testified he saw Douglas do this about three times. Fox then yelled at Douglas, which stopped the altercation.

The jury convicted Douglas on all four counts. Apparently the parties at sentencing agreed, with the consent of the court, that Douglas would not be sentenced on the charge of willful injury because, as they stated, it was a lesser-included offense of attempted murder and was subsumed by the greater offense.[1] The court sentenced Douglas to an indeterminate term of imprisonment not to exceed twenty-five years on the conviction for attempted murder, an indeterminate term not to exceed two years on the conviction for domestic abuse assault, and an indeterminate term not to exceed ten years on the conviction for reckless discharge of a firearm. The court ordered the sentences to run consecutively.

## I. Motion for Recusal of Trial Judge

■ Douglas contends Judge Alpers should have recused herself from presiding over the trial and sentencing. He argues the rejection of the plea agreement, the allowance of testimony of prior bad acts, and the imposition of consecutive sentences show reasonable persons might question her impartiality.

■ The burden of showing grounds for recusal is on the party seeking recusal. *Campbell v. Quad City Times,* 547 N.W.2d 608, 611 (Iowa App.1996). This burden is substantial and we will not overturn the trial judge's decision absent an abuse of discretion. *State v. Farni,* 325 N.W.2d 107, 110 (Iowa 1982). To show an abuse of discretion, a party must show the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *In re Estate of Olson,* 479 N.W.2d 610, 613 (Iowa App.1991) (quoting *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976)).

■ A judicial officer is disqualified from acting in a proceeding if the officer "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Iowa Code § 602.1606(1) (1995). If a judge's impartiality might reasonably be questioned because of such bias or extrajudicial knowledge, the judge should recuse himself or herself. *State v. Rhode,* 503 N.W.2d 27, 36 (Iowa App.1993) (citing Iowa Code of Judicial Conduct Canon 3(D)(1)(a) (1992)). The test is whether a reasonable person would question the judge's impartiality. *McKinley v. Iowa Dist. Court,* 542 N.W.2d 822, 827 (Iowa 1996); *see also State v. Mann,* 512 N.W.2d 528, 532 (Iowa 1994) (phrasing test as whether reasonable persons with knowledge of all facts would conclude the judge's impartiality might reasonably be questioned).

■ A party must show actual prejudice before a recusal is necessary. *McKinley,*

---

1. We note willful injury is not a lesser-included offense of attempted murder. *State v. Clarke,* 475 N.W.2d 193, 194–95 (Iowa 1991); *State v. Adcock,* 426 N.W.2d 639, 640 (Iowa App.1988). From our examination of the verdicts (Count I), the jury did not find defendant guilty of "willful injury" as a lesser-included offense of attempted murder. The verdict forms reveal the jury found defendant guilty of "willful injury" under Count II. In accordance with *Clarke,* since these convictions resulted from one prosecution, there is nothing to prevent the State from charging and convicting the defendant for both attempting to murder and at the same time willfully injuring a victim. As we held in *Adcock,* since willful injury is not a lesser-included offense of attempted murder, had the defendant been found guilty of willful injury as a lesser-included offense of attempted murder, he would have been found guilty of a crime for which he was not charged. Thus, as a lesser-included offense, the charge would have been nullified.

---

542 N.W.2d at 827. Only personal bias or prejudice is a disqualifying factor, not judicial predilection. *State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976). To be a disqualifying factor, the bias or prejudice must stem from an extrajudicial source and "'result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *State v. Smith*, 282 N.W.2d 138, 142 (Iowa 1979) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966)).

We hold the trial court did not abuse its discretion in overruling Douglas's motion for recusal. No evidence shows Judge Alpers possessed any personal knowledge of disputed facts in the proceedings. Rather, she expressly referred to the minutes of testimony in her order declining to entertain a guilty plea. She reasoned the plea agreement was inappropriate due to the nature of the injury and the circumstances under which it was inflicted. Her activities in the area of domestic abuse were not in the nature of victim advocacy, but were geared toward case management issues.[2] Her work, along with others, on a domestic abuse coalition looks not to a particular case but to improve the general framework of the system.[3] It does not, by itself, support a claim for recusal. *See United States v. Payne*, 944 F.2d 1458, 1476 (9th Cir.1991), *cert. denied*, 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992) (judge's participation in commission on pornography did not support recusal from trial for carnal knowledge of child); *State v. Knowlton*, 123 Idaho 916, 854 P.2d 259, 263 (1993) (judge's membership in governor's task force on child abuse did not require recusal from probation revocation hearing involving statutory rape).

## II. Prior Bad Acts

■■■■ Douglas contends the trial court should not have admitted evidence he assaulted Lydia approximately one year before the shooting. He argues the evidence was not necessary because the State presented an abundance of proof the shooting was not accidental. Thus, he argues the danger of unfair prejudice substantially outweighed any probative value of the evidence. We review for an abuse of discretion. *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988).

■■■■ Evidence of prior bad acts is not admissible to show a general propensity to commit wrongful acts. *State v. Bayles*, 551 N.W.2d 600, 604 (Iowa 1996). Evidence of prior bad acts may be admitted, however, for one or more of the nonexclusive purposes listed in Iowa Rule of Evidence 404(b). *Plaster*, 424 N.W.2d at 228. The analysis for admissibility is two-fold: (1) Is the evidence relevant; and (2) does the danger of unfair prejudice substantially outweigh the probative value of the evidence. *State v. Uthe*, 542 N.W.2d 810, 814 (Iowa 1996). "'Unfair prejudice' involves 'an undue tendency to suggest decisions on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Plaster*, 424 N.W.2d at 231).

We cannot find the trial court abused its discretion by allowing the evidence. As early as voir dire, the nature of the shooting as intentional or accidental was at issue. The testimony that Douglas grabbed his wife's hair and beat her head against a car previously was relevant to the issue of intent. Evidence that Douglas intentionally assaulted Lydia during a previous argument tends to rebut his accidental shooting argument.

---

**2.** The facts of this case do not rise beyond the level of facts in other cases in which no abuse of discretion was found. *See McKinley v. Iowa Dist. Court*, 542 N.W.2d 822, 826–27 (Iowa 1996) (holding court's apparent anger at counsel's insistence on strict proof of an issue and statement the court would consider resulting adjournment when determining attorney fees revealed no prejudice on the merits of the action); *State v. Bear*, 452 N.W.2d 430, 434–35 (Iowa 1990) (holding defendant charged with making harassing phone call to sheriff's department did not meet burden of showing impartiality even though case was tried to a judge to whom defendant also made "aggravating calls"); *State v. Farni*, 325 N.W.2d 107, 110 (Iowa 1982) (holding judge's statement at bond review hearing that defendant was "obviously guilty of something" was based on minutes of testimony and although ill-advised did not constitute an abuse of discretion).

**3.** Moreover, judicial participation in a domestic abuse coalition is increasingly viewed as an important component of the overall work of a judge. *See* Mark S. Cady, Domestic Violence Creates An Important New Role For Judges and Lawyers, *The Iowa Lawyer*, August 1996, at 10.

Douglas argues other evidence, such as the ongoing argument, his demeanor and actions on the day of the shooting, and the expert testimony on the gun's trigger pull, was sufficient for the State to prove intent. This evidence was rebutted, however, by his videotaped statement, which was played at trial and in which he claimed he only used the gun to scare Lydia and the shooting was accidental. Lydia testified although she did not reach for the gun, she hit it with her hand. Even the State's expert witness testified a gun that would not discharge at a given sustained pressure would discharge if it were jerked. Given the disputed nature of the evidence and the defense's position the shooting was an accident, we do not find an abuse of discretion.

## III. Consecutive Sentences

Douglas frames his challenge to the imposition of consecutive sentences in terms of a claim of ineffective assistance of counsel. He claims his trial counsel was ineffective for failing to object to the consecutive sentences as constituting multiple punishments violative of the prohibition against double jeopardy.

Customarily such ineffective assistance of counsel claims are preserved for postconviction proceedings. *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994). They may be resolved on direct appeal, however, when the record adequately addresses the issue. *Id.* This is such a case. Because Douglas asserts a violation of his constitutional right, our scope of review is de novo. To prevail on a claim of ineffective assistance of counsel, defendant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Bugely,* 562 N.W.2d 173, 178 (Iowa 1997).

The Double Jeopardy Clause prohibits, among other things, multiple punishments for the same offense. *State v. Wissing,* 528 N.W.2d 561, 565 (Iowa 1995). Because the legislature is vested with the power to prescribe crimes and determine punishment, the question whether punishments are multiple is essentially one of legislative intent. *Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535, 542–44 (1983); *Wissing,* 528 N.W.2d at 565; *State v. Franzen,* 495 N.W.2d 714, 716 (Iowa 1993). Generally, "the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed." *State v. McKettrick,* 480 N.W.2d 52, 57 (Iowa 1992).

One means of determining legislative intent in this context is to employ the same elements test, also referred to as the legal elements test, which provides:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*State v. Butler,* 505 N.W.2d 806, 807 (Iowa 1993) (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). This test is the same test Iowa courts use to determine whether an offense is a lesser-included offense of a greater offense. *State v. Aguiar–Corona,* 508 N.W.2d 698, 701–02 (Iowa 1993). If the lesser offense contains an element that is not part of the greater offense, the lesser is not included in the greater. *Id.* at 702. In other words, the lesser offense is included in the greater offense if it is impossible to commit the greater offense without also committing the lesser offense. *State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994).

We apply the test by putting the statutes side by side and comparing the elements. *Id.* We examine the statutory definitions, not the facts supporting the convictions. *State v. Clarke,* 475 N.W.2d 193, 195 (Iowa 1991). When a statute provides alternative means of committing a crime, the alternative submitted to the jury controls. *Aguiar–Corona,* 508 N.W.2d at 702.

If the test reveals one offense is not a lesser-included offense of another offense, the two offenses are not the same and

punishment for both is presumptively acceptable. *McKettrick*, 480 N.W.2d at 57. Because the test is merely a rule of statutory construction geared toward discerning legislative intent, however, it is not controlling when a clear indication of contrary legislative intent exists. *Id.* at 58. Iowa cases have applied the test and reached two distinct results. In some cases, the court has found offenses were lesser-included offenses and multiple punishments were presumptively not allowed, but nevertheless upheld multiple punishments based on a clear indication of legislative intent. *See State v. Halliburton*, 539 N.W.2d 339, 344–45 (Iowa 1995)[4]; *State v. Lewis*, 514 N.W.2d 63, 68–69 (Iowa 1994)[5]; *State v. Gallup*, 500 N.W.2d 437, 442–43 (Iowa 1993).[6] In another case, the supreme court held one offense was not a lesser-offense of another—meaning multiple punishments presumptively were allowed—but found a clear legislative intent against multiple punishments. *See McKettrick*, 480 N.W.2d at 58.

Douglas argues the sentences for reckless use of a firearm and domestic abuse assault violate the prohibition against double jeopardy when ordered to run consecutively to the sentence for attempted murder. He concedes the offense of reckless use of a firearm does not satisfy the *Blockburger* test and is not a lesser-included offense of attempted murder. He argues, however, a clear legislative intent against multiple punishments exists and prevents the imposition of consecutive sentences. He argues the offense of domestic abuse assault while displaying a firearm is a lesser-included offense of attempted murder and no clear legislative intent demonstrates multiple punishments are proper.

## A. Reckless Use of a Firearm

 As noted, Douglas concedes the offense of reckless use of a firearm is not a lesser-included offense of attempted murder. Douglas relies on the supreme court's decisions in *McKettrick* and *Aguiar–Corona* on the question of double punishment for a single offense.

In *McKettrick*, the supreme court held multiple punishments could not be imposed for both assault with intent to commit serious injury and assault causing bodily injury. *McKettrick*, 480 N.W.2d at 58. Assault with intent to commit serious injury required a defendant to intend to inflict serious injury, whereas assault causing bodily injury did not require a defendant to intend to inflict serious injury. *Id.* at 56. The court agreed it would be impossible for a defendant to commit a single assault both *with* the intent to inflict serious injury and *without* the intent to inflict serious injury. *Id.* at 58.

In *Aguiar–Corona*, the supreme court explained the impossibility of committing both offenses at issue in *McKettrick*. *Aguiar–Corona*, 508 N.W.2d at 703. The court's obvious reason was one crime negated the intent required for the other. *Id.* This factual and logical inconsistency showed the legislature could not have intended multiple punishments based on a single assault. *Id.*

4. In *Halliburton*, the supreme court held that possession of an offensive weapon was a lesser-included offense of possession of an offensive weapon by a felon. Comparing the elements of each offense, it is impossible to commit the greater offense—possession of an offensive weapon by a felon—without also committing the lesser offense—possession of an offensive weapon. Although the defendant was convicted of the "same" offense, for double jeopardy analysis the court held the legislature clearly intended multiple punishments for both crimes. The defendant was not subject to double jeopardy and the merger requirements of section 701.9 did not apply.

5. In *Lewis*, the supreme court held that terrorism was a lesser-included offense of criminal gang participation reasoning that terrorism is the "criminal act" or underlying offense for criminal gang participation. Although for double jeopardy analysis the two offenses the defendant was convicted of are the "same" offense, the court held that the legislature clearly indicated an intent to allow multiple convictions and multiple punishments for criminal gang participation and for any of the "criminal acts" used as the underlying offense for criminal gang participation. There is no double jeopardy violation in imposing consecutive sentences.

6. In *Gallup*, it was held that delivery of a controlled substance was a lesser-included offense of a drug stamp violation. Again, even though for double jeopardy analysis the offenses are the "same," the court held the legislature clearly authorized cumulative punishments under the two statutes in a single trial.

The supreme court in *Aguiar–Corona*, a single assault case, compared the crimes of assault while participating in the felony of going armed with intent causing serious injury with the offense of willful injury and found the crime of assault while participating in a felony was not a lesser-included offense of willful injury for it includes an element that is not a part of the greater offense of willful injury, i.e. the element of participating in the felony of going armed with intent causing serious injury is not required to commit willful injury. It was reasoned that no element of either offense negates the elements of the other. *Aguiar–Corona*, 508 N.W.2d at 703. Thus, double jeopardy was not implicated and under those circumstances the presumption exists that the legislature intended multiple punishments for both offenses, even though they arose out of the same incident.

The trial court in the case at bar instructed the jury in separate counts that the elements of attempted murder and reckless use of a firearm are:

### INSTRUCTION NO. 24

. . . .

1. [t]he defendant did display a firearm to Lydia Haskins.
2. By his acts, the defendant expected to set in motion a force or chain of events which could have caused or resulted in the death of Lydia Haskins.
3. When the defendant acted, he specifically intended to cause the death of Lydia Haskins.

### INSTRUCTION NO. 35

. . . .

1. [t]he defendant intentionally discharged a firearm in a reckless manner.
2. The defendant's act caused a serious injury to Lydia Haskins. . . .

With those two instructions in mind, Douglas contends he was punished both for intentionally causing injury and for recklessly causing injury. He argues he could not, in a single assault, specifically intend to cause death and also cause injury recklessly and without specific intent. We conclude, however, Douglas's argument in this respect fails.

Douglas was convicted of two separate offenses. For this reason, the multiple punishments the trial court imposed did not violate the double jeopardy clause, even though both offenses arose out of a single incident. Contrary to the defendant's contention, no element of either defense negates the elements of the other. It is equally clear that since the one offense is not the lesser-included offense of the other, the two offenses were not merged for the purposes of sentencing. In addition, when the statutory language of the two offenses is reviewed, a person commits reckless use of a firearm if he intentionally discharges a firearm in a reckless manner and serious injury occurs. Iowa Code § 724.30(1) (1995). In this context, the word "reckless" modifies the manner in which the intentional discharge of a firearm occurs, not the person's mental state in regards to causing injury.

Thus, this case does not rise to the level of *McKettrick*, in which the intent in one crime and the lack of intent in the other crime specifically related to inflicting injury. *McKettrick*, 480 N.W.2d at 58. No element of reckless use of a firearm negates an element of attempted murder.

### B. Domestic Abuse Assault

 Douglas contends domestic abuse assault while displaying a firearm is a lesser-included offense of attempted murder. He argues there is no clear legislative intent that multiple punishments should be imposed.

To apply the *Blockburger* test, we set out the elements of domestic abuse assault: (1) The defendant displayed a dangerous weapon to Lydia Haskins in a threatening manner; and (2) the defendant and Lydia Haskins are married to each other. We have previously set out the elements of attempted murder.

 We hold domestic abuse assault is not a lesser-included offense of attempted murder. The offense of domestic abuse as-

sault includes elements not a part of attempted murder; the additional elements are marriage to the victim and displaying a dangerous weapon. It is not impossible to commit attempted murder without committing domestic abuse assault. Under that analysis, a person can attempt to commit murder, whether married to the victim or not, and with or without displaying a dangerous weapon.

Each count Douglas was convicted of required proof of an additional fact which the other did not. Since the offenses are not the same crime, under *Blockburger* there is a presumption that multiple punishments can be assessed. *Aguiar-Corona*, 508 N.W.2d at 701. The trial court did not violate double jeopardy principles in submitting these two offenses to the jury, nor did it err when it invoked a punishment for each offense. Douglas's claim of ineffective assistance of counsel is without merit.

Douglas argues Iowa Code section 708.2A(2)(c) (domestic abuse assault) demonstrates a clear legislative intent not to allow multiple punishments for a domestic abuse assault and a more serious offense such as attempted murder. This section limits its application if the sections relating to terrorism (section 708.6) or going armed with intent (section 708.8) apply. This statutory exclusion does not include attempted murder. For us to extend the statute's scope to include attempted murder would clearly be contrary to legislative intent. *See Santa Rosa Sales*, 475 N.W.2d at 218 (failure to include exception reveals legislative intent to exclude it); *cf. State v. Ray*, 516 N.W.2d 863, 867 (Iowa 1994).

**AFFIRMED.**

All judges concur except SACKETT, P.J., and HUITINK, J., who specially concur.

SACKETT, Presiding Judge (concurring specially).

I concur with the majority opinion in most respects. I write specially because I wish to make it clear my finding the trial judge did not abuse her discretion in overruling defendant's motion asking she be recused is based on a record that shows her work with a coalition on domestic abuse to be nothing more than helping to provide a judicial forum so issues concerning charges of domestic abuse could be fairly litigated.

Insomuch as the majority opinion may seek to hold that a domestic abuse coalition only looks to improve the general framework of the system or is an important component of the overall work of a judge, I find there is no record here to make such a determination and the issue is not before us. I cannot on this record determine whether a domestic abuse coalition may be an advocacy group associated with a strong ideological point of view. If a certain coalition is associated with a strong ideological point of view, then there is support for finding judges should refrain from membership. *See Mothers Against Drunken Driving*, Fla. Adv. Op. 82–18 (1982); *The Sierra Club*, Adv. Op. 40 Fed.; and Adv. Comm. on Judicial Activities Defamation League of B'nai B'rith.

There are a number of serious ills in our society. As judges, we have the responsibility to educate ourselves on these problems, but we must do so in such a way that our impartiality is not questioned, for we have a responsibility to render justice to all people who come before us. One of the first requirements for the administration of justice is an impartial judge who acts with cold neutrality. *See State v. Iowa District Court*, 572 N.W.2d 587 (Iowa 1997); *State v. Glanton*, 231 N.W.2d 31, 35 (Iowa 1975).

I carry the opinion that as a judge I must refrain from involvement in any group that may impact my impartiality or cause the public to question my impartiality. I also feel I must refrain from membership in groups where other members of the group may perceive me to be a messenger for their position if the group carries a strong ideological point of view.

To the extent the majority opinion, including footnotes, may appear to make a pronouncement that it is the responsibility of

judges to participate in domestic abuse coalitions, I cannot concur. The decision to be involved or not to be involved is a decision a judge should make only after considering restrictions placed on judges by the Code of Judicial Conduct and after taking a careful look at the agenda of any organization that calls itself a domestic abuse coalition.

HUITINK, J., joins in this special concurrence.