David W. IRVING, Appellee,

v.

STATE of Iowa, Appellant.

No. 94–114.

Supreme Court of Iowa.

June 21, 1995.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Terry Rachels, County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellee.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

The State seeks further review of a court of appeals' ruling that David W. Irving received ineffective assistance of counsel which resulted in his entrance of a plea of guilty to two criminal charges. The district court held that Irving's court-appointed counsel rendered him ineffective assistance in failing to investigate the admissibility of his confession and inculpatory evidence. The court further held that Irving experienced prejudice as a result of this ineffective assistance because the possibility that the confession and evidence could have been suppressed undermined the court's confidence in the proceeding's outcome. The court of appeals agreed. On further review, we now vacate the decision of the court of appeals, reverse the judgment of the district court and remand.

## I. Factual and Procedural Background

On the night of December 28, 1991, Marion County deputy sheriff Barry Sharp responded to a silent alarm which had sounded at McCorkle Hardware in Columbia, Iowa. When he drove up to the hardware store, he observed a pickup truck parked along the side of the road near the building. Sharp spoke to the sole occupant of the vehicle, Nicole M. Morrison, who told him she thought she had tire trouble.

Sharp then went to the hardware store and determined someone had entered it. A reserve officer arrived on the scene and was talking with Morrison when Sharp returned to the truck. At this point, David W. Irving appeared out of a nearby ditch. He was dirty and sweaty. Sharp handcuffed Irving and placed him inside Sharp's vehicle. Sharp then returned to the pickup and spoke with Morrison.

After Sharp returned to his own vehicle, Irving confessed to burglarizing the hardware store and told Sharp where he had placed the burglary tools he had carried with him. Irving was then taken to the sheriff's office in Knoxville. An officer at the sheriff's office read Irving his *Miranda* rights. Thereafter, he made further incriminating statements.

The State charged Irving with two class C felonies, burglary in the second degree, in violation of Iowa Code sections 713.1 and .5 (1991), and possession of burglary tools, in violation of Iowa Code sections 713.1 and .7. Irving's request for court-appointed counsel was granted.

Prior to Irving's entrance of a plea, Irving's counsel met with him approximately three times. Irving's counsel also met with him approximately three times after he entered a plea of guilty to the two charges in February of 1992. At Irving's sentencing hearing in March of 1992, he filed a handwritten statement requesting that he be permitted to withdraw his guilty plea on the ground that he had not been given his *Miranda* rights prior to his initial confession, and therefore, his confession should be suppressed. The court continued sentencing to a date two weeks later in order to permit Irving's counsel to consider the handwritten document.

On April 4, 1992, Irving appeared for sentencing and the court heard arguments on and reviewed Irving's request as a motion in arrest of judgment. The court ultimately determined the handwritten motion was untimely since it had been filed on the date on which sentencing had previously been set. The court subsequently sentenced Irving to two concurrent ten-year sentences for the felony charges. For pleading guilty, Irving received as a concession the Marion County Attorney's agreement to not charge him as an habitual offender.

Irving subsequently filed an application for postconviction relief on the ground that he had received ineffective assistance of counsel. Due to the alleged ineffective assistance, Irving requested that his initial conviction be overturned or that, in the alternative, he be granted a new trial. Following an evidentiary hearing, in December of 1993, the trial court granted Irving's application, set aside his convictions and sentence, and ordered a new trial. The State appealed, and in January of 1995, the court of appeals affirmed the trial court's decision. We have granted the State's request for further review.

## II. Scope of Review

■ Since postconviction claims of ineffective assistance of counsel involve constitutional issues, we review prior court decisions on such claims de novo. *Greiman v. State,* 471 N.W.2d 811, 814 (Iowa 1991); *Brewer v. State,* 444 N.W.2d 77, 79–80 (Iowa 1989). Upon an application for further review from the court of appeals, we may consider all issues properly preserved and raised in the original briefs. *Bokhoven v. Klinker,* 474 N.W.2d 553, 557 (Iowa 1991). Our review of decisions of the court of appeals is not limited by reason of the language in the application for further review. *Bokhoven,* 474 N.W.2d at 557; *Shivvers v. Mueller,* 340 N.W.2d 586, 588 (Iowa 1983); *see also Blessing v. Norwest Bank Marion, N.A.,* 429 N.W.2d 142, 143 (Iowa 1988). In this case, the State has only requested further review on the issue of the prejudice prong of the ineffective assistance of counsel claim.

## III. Ineffective Assistance of Counsel

■ To establish a claim of ineffective assistance of counsel, a criminal defendant carries the burden of showing by a preponderance of the evidence that: (1) counsel failed to perform an essential duty; and (2) the defendant experienced prejudice as a result of the counsel's performance. *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994); *Brewer,* 444 N.W.2d at 83. To establish the first element of the test, the defendant must overcome the presumption that the counsel was competent and demonstrate that, when considering the totality of the circumstances, the counsel's performance was not within the normal range of competency. *Buck,* 510 N.W.2d at 853; *Brewer,* 444 N.W.2d at 83. In order to demonstrate prejudice, the defendant must show counsel's failure worked to the defendant's actual and substantial disadvantage so that a reasonable probability exists that but for the counsel's error, the result of the proceeding would have been different. *Buck,* 510 N.W.2d at 853; *Brewer,* 444 N.W.2d at 83; *see also Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). " 'A reasonable probability is a probability sufficient to undermine confidence in the out-

come.'" *Brewer,* 444 N.W.2d at 83 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). In the context of guilty pleas, a defendant may establish the occurrence of prejudice by showing "there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *see also Beans v. Black,* 757 F.2d 933, 936–37 (8th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985); *Thomas v. Lockhart,* 738 F.2d 304, 307 (8th Cir.1984); *State v. Lyman,* 241 Neb. 911, 492 N.W.2d 16, 19 (1992).

■ Irving contends the officer to whom he initially confessed did not inform him of his *Miranda* rights prior to his initial confession and he originally confessed in order to get the police to "take the heat off" of Morrison. The officer who received Irving's initial confession testified that he did read Irving a *Miranda* warning and the officer also wrote in his supplementary investigation report that he gave the warning before Irving initially confessed. Irving argues he received ineffective assistance of counsel because his court-appointed attorney did not engage in a reasonable investigation of the case and especially failed to investigate the admissibility of his initial confession and the evidence police recovered with the aid of the confession.

The State argues that Irving's counsel did not fail to perform his duties properly, but instead took the proper course of action and strategy in representing Irving since Irving indicated he wished to avoid habitual violator charges. The State notes that Irving's counsel succeeded in getting concurrent sentences for Irving on the two counts and additionally got the State to not charge Irving as an habitual violator.

■ The failure of counsel to investigate or move to suppress a questionable confession does not constitute per se ineffective assistance of counsel. *See State v. Nielsen,* 243 Neb. 202, 498 N.W.2d 527 (1993). The State argues that even if Irving's counsel did not adequately perform his duties, Irving experienced no prejudice because he was found near the store, he and Morrison gave

conflicting reasons for being at that location, the mud on Irving would ultimately have been matched with mud located near the building's point of entrance, and the stolen goods were located so near the store that Irving's confession was unnecessary for their discovery. Irving contends that he was prejudiced because his decision to plead guilty was not fully informed, and had he been informed of the possibility of the suppression of his confession and evidence, there was a reasonable probability he would have sought to go to trial instead of plead guilty. Irving points to his unsuccessful attempt to withdraw his guilty plea by way of a handwritten motion as evidence he would have sought a trial if he had been fully informed.

Our review of the record convinces us that there was not a reasonable probability that, but for his counsel's errors, Irving would not have pleaded guilty and would have insisted on going to trial. The facts recited in the argument of the State are persuasive. At the scene of the burglary, Irving came up out of the ditch sweating heavily although the temperature was in the 30s. He was muddy on his knees, his shoes, and his hands. The large quantity of stolen goods that he confessed to taking was located in a large burlap bag on a two-wheel dolly at the north gate of the burglarized property. The burglary tools, consisting of a camouflage-colored glove, a yellow glove, cloth shoe coverings, and a small crowbar, were located in the vicinity of the pickup where Irving was arrested. It is likely they would have been soon discovered, despite the confession, and tied to Irving. Incriminating evidence, independently discovered, would not have been suppressed as "fruit of the poisonous tree." *See Nix v. Williams,* 467 U.S. 431, 449–50, 104 S.Ct. 2501, 2511–12, 81 L.Ed.2d 377, 390–91 (1984); *State v. Vincik,* 436 N.W.2d 350, 354 (Iowa 1989); *State v. Williams,* 285 N.W.2d 248, 258–59 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980).

We also find legal significance in the fact that Irving confessed a second time at the police station after he signed a written waiver of his *Miranda* rights. His testimony on this point was as follows:

Q. Did you ever sign a written waiver of your Miranda rights at the station? A. At the station, yeah. Q. If you had been at this point advised of your right to remain silent, why did you go ahead and confess again? A. I already confessed once I thought. I didn't really think nothing about it. If there was a possibility that she could be able to go home, I guess I would go ahead and tell them what happened. Q. Did you give a statement to the police at that time? A. Yes, I did. Q. And what did you—what did you tell the police during this statement? A. What had happened, what led up to the events that night.

Controlling on this point is *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The United States Supreme Court stated: "We hold that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238. Irving's second confession was admissible based on this authority.

The application by Irving for postconviction relief should have been denied. Decision of court of appeals vacated; judgment of district court reversed and remanded for entry of order pursuant to this opinion.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.**