# IN THE COURT OF APPEALS OF IOWA

No. 21-1335
Filed November 8, 2023

**CLIFFORD BERT SMILEY,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

　　　An applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**

　　　Thomas Hurd of Law Office of Thomas Hurd PLC, Des Moines, for appellant.

　　　Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee State.

　　　Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Clifford Smiley appeals the denial of his application for postconviction relief. He claims he would not have pled guilty but for erroneous advice from his trial counsel. Bypassing concerns about error preservation, we find Smiley failed to prove a reasonable probability he would have demanded a trial. We affirm.

## I.     Background Facts and Proceedings

By all accounts, Smiley stabbed his estranged wife in April 2018. She survived and was prepared to testify against him. Multiple witnesses saw Smiley stab her, and the stabbing was captured on video. Medical experts were also prepared to testify that the injuries were life-threatening and to recount admissions Smiley made about attempting to kill his wife. Police officers documented other admissions by Smiley, including: "you don't need to worry about [my wife] anymore, she's dead, I killed her."

Smiley was arrested and ultimately charged with six indictable offenses, the most serious of which was attempt to commit murder, a class "B" forcible felony in violation of Iowa Code section 707.11(1) (2017). In total, Smiley faced up to fifty-two years in prison with a 70% mandatory minimum on the twenty-five-year sentence for the forcible felony.

The State's final offer was for Smiley to plead guilty to one count of attempt to commit murder. If he did so, the remaining five counts (totaling an additional twenty-seven years of sentencing exposure) would be dismissed. Two plea hearings were held, the second of which was completed and resulted in a plea.

During the first plea hearing, Smiley's counsel made an erroneous remark suggesting that earned- or good-time credit would apply toward the 70%

mandatory minimum. *See* Iowa Code ch. 903A (regulating earned-time credit). Following this remark, the parties met in chambers. After conferring with counsel, Smiley confirmed he wanted to go ahead with the guilty plea. In open court, the district judge twice correctly advised Smiley during a lengthy plea colloquy that the twenty-five-year sentence carried a 70% mandatory minimum before parole eligibility. During other portions of the colloquy, Smiley's counsel represented to the court that he had investigated defenses, including diminished responsibility and intoxication, and the defenses were either not viable or legally unavailable. Smiley admitted attacking his wife and agreed the video showed him stabbing her. But the attempted plea hearing ended soon after when Smiley resisted some of the court's questions on the intent element for attempt to commit murder.

After this, Smiley entered into a written plea agreement with the State. A second plea hearing was held about ten days after the first. The agreement was substantially similar, except Smiley would plead guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970), conceding the strength of the State's evidence but not admitting guilt. The court again correctly recited the 70% mandatory minimum, both in remarks opening the hearing and in colloquy with Smiley. The court also expressly clarified that the minimum "does not mean that there's a guarantee that you would get parole after 70%, but you would be eligible and could be considered at that time."

At the second plea hearing, Smiley's counsel again represented that there were no viable defenses other than a general denial. And Smiley again agreed that there was evidence he stabbed his wife. Specifically, the court asked Smiley whether he agreed there was evidence he stabbed his wife and told her: "Nobody

can have you if I can't.  Nobody can."  Smiley agreed his wife would testify to that effect and there was strong evidence in the record of his actual guilt.

When the court asked Smiley to explain why he was choosing to plead guilty, Smiley explained he knew this was the best deal the State would offer and that

> if I don't take this plea, the State is going to give me all these charges . . . you know what I mean, if I don't accept this plea.  So I might as well take it and try to, you know, maybe hope for a prayer that one day I might be able to get out and let them try to bake me with all these other charges that I know I may be not—I'm responsible for in order—you know, like escape from custody.

Smiley also told the court he knew he had nothing to gain by going to trial.  The court agreed, finding Smiley obtained a "significant benefit" by reducing his sentencing exposure from more than fifty years to twenty-five years.

In allocution just before judgment was imposed, Smiley acknowledged that he would be incarcerated for at least seventeen years:

> I treasure God, and I've now—she have gave me opportunity [sic] to find myself and to go—and to at least go and become an advocate of women's rights *behind bars for the next seventeen years or however long.*  I just want everybody to know that that is not who I am.  This one incident has taken the rest of my life, but I will also dedicate the rest of my life to make sure that every individual in that jail and whatever I end up knows that this is not something that a man supposed to do.

(Emphasis added.)  The court sentenced Smiley to twenty-five years in prison, with a 70% mandatory minimum before parole eligibility.

Smiley applied for postconviction relief in 2019, and the district court denied relief after trial.  This appeal follows.

## II.    Preservation of Error

The State contests error preservation.  While Smiley argued the plea-advice issue he pursues on appeal at his postconviction trial, the State urges that the district court did not rule on that issue explicitly.  The district court entered a seven-page ruling addressing Smiley's claims as to actual innocence, specific intent, and diminished responsibility.  The State is correct that the court did not expressly address plea advice.  However, the district court denied the application based "on the argued grounds asserted at trial."  And the transcript indicates Smiley testified to, and his lawyer argued, the issue during trial.

We recognize Smiley failed to plead this issue in his application for postconviction relief.  But the district judge ruled during trial that the issue was the proper subject of testimony and avowed her intent to "render a decision on all matters raised," whether they were properly pled or not.  We are reluctant to disturb this ruling absent a cross-appeal.

Although a close call, we elect to bypass the State's error-preservation concern and proceed to the merits.

## III.    Standard of Review

"We generally review a district court's denial of an application for postconviction relief for errors at law."  *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021).  But a postconviction relief "application alleging ineffective assistance of counsel raises a constitutional claim, and we review postconviction proceedings that raise constitutional infirmities de novo."  *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) (cleaned up) (citation omitted).  Under this standard of review, "we give deference to the district court's findings, especially on credibility

issues. However, we are not bound by those findings." *State v. McCoy*, 692 N.W.2d 6, 21 (Iowa 2005).

In his brief, Smiley argues for a remand based on the concluding paragraph of the district court's order, which reads: "The court hereby finds that [Smiley] has not established by clear and convincing evidence that there is merit to his post-conviction relief application on the argued grounds asserted at trial." We find the statement about "clear and convincing evidence" is a non-prejudicial error. The district court earlier in its ruling correctly identified the burden as "by a preponderance of the evidence" and analyzed the evidence accordingly. *See Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998) ("[A] postconviction applicant has the burden to prove by a preponderance of the evidence that counsel was ineffective."). We discern no prejudice to Smiley with this errant sentence, particularly given that he must rely on the same sentence's imprecise language to preserve error for us to reach the merits of his claim.

## IV. Discussion

Smiley's claim on appeal is that he received ineffective assistance due to advice his attorney gave him regarding parole eligibility. To establish ineffective assistance of counsel, Smiley faces the familiar burden to prove that his attorney breached an essential duty and that he was prejudiced by that breach. *Irving v. State*, 533 N.W.2d 538, 540 (Iowa 1995). "To establish the first element of the test, the defendant must overcome the presumption that the counsel was competent and demonstrate that, when considering the totality of the circumstances, the counsel's performance was not within the normal range of competency." *Id.* On the second element, prejudice in the context of a guilty plea

means "a reasonable probability that, but for counsel's errors, [the defendant or postconviction applicant] would not have pleaded guilty and would have insisted on going to trial." *Doss*, 961 N.W.2d at 709 (citation omitted); *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985).

In assessing prejudice, we weigh the benefit of the bargain a criminal defendant received by pleading guilty against any evidence he would have withdrawn his plea and demanded a trial had he known of the alleged error. *See State v. Hallock*, 765 N.W.2d 598, 606 (Iowa Ct. App. 2009). In conducting this review, "the applicant's assertions that he or she would not have accepted the plea agreement and would not have pled guilty is judged in the context of the strength of the State's case or the advantages to the applicant of the plea agreement." *Boschert v. State*, No. 13-0009, 2013 WL 6405468, at *4 (Iowa Ct. App. Dec. 5, 2013); *see Sothman*, 967 N.W.2d at 526.

Although we doubt Smiley carried his burden to prove breach in light of the court's repeated correct statements on parole eligibility, we elect to resolve this appeal on the prejudice prong. Smiley reduced his sentencing exposure by more than half, from fifty-two years to twenty-five. Based on the minutes of testimony and plea-hearing transcripts, the evidence of Smiley's guilt was strong, if not overwhelming. Smiley confirmed this when he admitted at the plea hearing he had nothing to gain by going to trial.

We weigh this strong evidence against Smiley's testimony at the postconviction trial that "[t]here is no way [he] would have entered that plea" if he knew the minimum was seventeen-and-a-half years instead of thirteen (based on application of earned- and good-time credit). Like the postconviction court, we do

not find Smiley's testimony credible. We do not believe he would have insisted on trial over this potential four-and-a-half-year difference. Given Smiley's lack of credibility, the four-and-a-half-year difference, and the fact he traded what he believed to be a functional life sentence for one after which he believed he could live to see release, he cannot prove he would have demanded a trial when his guilt was all but certain. *See Hallock*, 765 N.W.2d at 606; *Boschert*, 2013 WL 6405468, at *4.

**V.      Disposition**

We find Smiley failed to carry his burden to prove ineffective assistance and affirm the denial of postconviction relief.

**AFFIRMED.**