# IN THE COURT OF APPEALS OF IOWA

No. 23-0853
Filed January 9, 2025


**DEMETRIUS SANCHEZ SLAUGHTER,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        An applicant appeals the denial of postconviction relief from two convictions

and the denial of his actual-innocence claims.  **AFFIRMED.**


        Alexander Smith of Parrish Kruidenier L.L.P., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.


        Considered by Chicchelly, P.J., Langholz, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**VOGEL, Senior Judge.**

While on probation for a prior offense, Demetrius Slaughter was charged with willful injury causing serious injury. His counsel negotiated a plea deal that again imposed probation, but while he was awaiting sentencing Slaughter was charged with two more offenses—third-degree theft and assault causing bodily injury. His counsel negotiated a global plea agreement that suspended eight years of prison, to run consecutive to his prior suspended four year sentence, and again kept him on probation, which he accepted. Later, Slaughter committed new crimes and his probation was revoked. Aggrieved to now be serving a prison sentence, Slaughter applied for postconviction relief (PCR) from his theft and assault convictions, alleging his counsel should have investigated his mother's potential testimony, which he believes would have exonerated him of both offenses had he chosen to go to trial. He also alleged he is actually innocent of both assault and theft. After a hearing on the issues, the PCR court denied his claims and Slaughter appeals.

On his ineffective-assistance claim, Slaughter and his counsel were well aware of his mother's potential testimony at the time he chose to plead guilty and made a strategic decision to accept a favorable plea offer in lieu of risking the outcome of a trial. Thus, Slaughter failed to show a breach by counsel or any resulting prejudice. As for his actual-innocence claim, Slaughter has not shown that no reasonable juror would have convicted him of either offense. Slaughter's narrow focus on his own version of events overlooks conflicting evidence in the minutes of testimony, which would be sufficient for jurors to convict him of both offenses. Accordingly, we affirm the PCR court.

## I. Factual Background and Proceedings.

This case arises from three different criminal proceedings. In early 2021, while Slaughter was on probation for a prior offense, he was charged with willful injury causing serious injury. *See* Iowa Code § 708.4(1) (2021). To resolve the charge, Slaughter's counsel negotiated a plea agreement that kept him on probation for the prior offense; suspended a five-year prison sentence; and allowed him to plead to a lesser offense of willful injury causing bodily injury.

While awaiting sentencing, the State charged Slaughter with two new offenses—third-degree theft and assault causing bodily injury. *See id.* §§ 714.29(3), 708.2(2). According to the minutes of testimony, a man left his iPhone outside of his home and when he returned to retrieve it, the phone was gone. The man used the iPhone's location tool, which showed his phone at a nearby Walmart kiosk. Investigation revealed Slaughter presented the phone to the kiosk and sold it. When an officer called Slaughter to ask about the stolen phone, he hung up. A follow-up call went to voice mail, where the officer left a message and phone number for Slaughter to call back; he failed to do so.

As for the assault charge, Slaughter and his ex-girlfriend were arguing outside of her apartment when Slaughter punched her and slammed her onto the ground. The victim reported it to the police, who also interviewed the victim's neighbor. The neighbor reported hearing the fighting and "a loud thud" when the victim "had been slammed." The neighbor went outside and saw the victim on the ground and a man get into a car and drive away.

Slaughter's counsel resumed plea negotiations with the State on all three charges. The parties reached a global plea agreement for consecutive prison

terms totaling eight years to run consecutive to his prior four-year sentence. The State agreed to suspend all sentences and keep Slaughter on supervised probation for three years, including completion of the Fort Des Moines Residential Facility program. Slaughter accepted the plea agreement and pleaded guilty to all three charges. The district court imposed the agreed-to sentence.

A few months later, Slaughter committed new offenses. Consequently, his probation was revoked and his eight-year prison sentence was imposed.

Slaughter then applied for postconviction relief from his theft and assault convictions. He argued his counsel provided ineffective assistance by failing to investigate potentially exonerating testimony from his mother.[1] Slaughter also asserted he was actually innocent of both offenses, arguing no reasonable juror would have convicted him of theft or assault in light of his exculpatory information. *See generally State v. Schmidt*, 909 N.W.2d 778 (Iowa 2018).

His application proceeded to trial, where both Slaughter and his mother testified. Slaughter's mother explained she was present when Slaughter found—not stole—an iPhone on the street. She also testified that on the day of the assault, she arrived outside of the victim's apartment to pick him up. As he was leaving, she saw the victim try to stab him with a screwdriver, which prompted Slaughter to push her down. He then got into his mother's car and the two drove home. The mother confirmed she told this information to Slaughter's counsel—that she witnessed Slaughter find the phone and she saw him push the victim in self-defense.

---

[1] Slaughter's application raised other instances of alleged ineffective assistance, but he does not renew those grounds on appeal.

Slaughter's testimony echoed much of his mother's testimony. He explained he found the iPhone on the street, he only pushed the victim after she swung at him first, and that his mother witnessed both events. Slaughter relayed this to his plea attorney and recalled his attorney telling him his mother would not be a viable witness because of their close relationship. On cross-examination, Slaughter confirmed he indeed pleaded guilty to both offenses and he only became unhappy with the plea agreement after his probation was revoked.

Slaughter also offered his plea counsel's deposition testimony. Counsel explained he "would have been happy to try" Slaughter's case, but that Slaughter wanted a plea deal to avoid prison. Counsel also emphasized the favorability of the plea agreement. Slaughter "had a criminal record from Alabama, a violent criminal record. He had multiple new criminal charges [while counsel] represented him. He was on probation when [counsel] represented him. The State could have easily proven out and then revoked his probation. And we still preserved his freedom." Counsel reasoned that once Slaughter was charged with assault and theft, "there was a very real threat" of Slaughter "going to prison," and the plea kept him on probation for all three offenses.

The PCR court rejected Slaughter's ineffective-assistance and actual-innocence claims. Relying on an unpublished decision from this court, the PCR court found that counsel did not breach any duty to investigate because all of Slaughter's mother's information was known to Slaughter and his counsel at the time. *See Poole v. State*, No. 21-1232, 2023 WL 2396418, at *3 (Iowa Ct. App. Mar. 8, 2023) ("Counsel's conduct in failing to further investigate topics already well known to [the defendant] was not a breach of a duty and did not prejudice

[him]."). The court further found Slaughter could not show prejudice, as Slaughter received a "substantial benefit by pleading guilty" and could not tie any of counsel's actions to a different outcome. Finally, the PCR court reviewed the minutes of testimony and found that even with Slaughter and his mother's testimonies, Slaughter failed to show by clear and convincing evidence that no reasonable juror would convict him of the theft or assault charges.

## II. Analysis.

### A. Ineffective Assistance of Counsel.

Criminal defendants are entitled to assistance of counsel, which in turn requires counsel to render effective assistance throughout the criminal proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Our statutory PCR scheme allows defendants to apply for relief from their convictions if they received constitutionally deficient representation. *See* Iowa Code § 822.2(1)(a). To obtain relief, defendants must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). Consistent with effective-assistance's constitutional station, our review is de novo. *Id.* at 725.

Counsel breaches an essential duty by failing to "meet the standard of performance required of a reasonably competent practitioner." *Id.* (citation omitted). This element is demanding—Slaughter "must overcome the presumption that the counsel was competent and demonstrate that, when considering the totality of the circumstances, the counsel's performance was not within the normal range of competency." *Irving v. State*, 533 N.W.2d 538, 540 (Iowa 1995). To show prejudice, Slaughter must further demonstrate "a reasonable probability that, but

for counsel's errors, he . . . would not have pleaded guilty and would have insisted on going to trial." *Id.* at 541 (citation omitted).

First considering breach, Slaughter faults his counsel for not further investigating his mother's testimony. Yet all of his mother's information was known to Slaughter and his counsel at the time he pleaded guilty—he knew his mother would testify she witnessed both events and was willing to testify about what she observed. *See Poole*, 2023 WL 2396418, at *3. Therefore Slaughter was not deprived of any crucial information when he chose to plead guilty in lieu of trial. Moreover, Slaughter offers only a conclusory assertion that extra investigation was needed. He "does not propose what an investigation would have revealed or how anything discovered would have affected the result obtained below." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Thus, while Slaughter styles his ineffective-assistance claim as a failure to investigate, Slaughter's true grievance is with counsel's advice that his mother would not have been a compelling witness. Yet that is precisely the kind of strategic decision that we will not second-guess. *See Smith v. State*, 7 N.W.3d 723, 733 (Iowa 2024).

Slaughter also cannot show prejudice. At most, Slaughter has shown that he regrets pleading guilty now that his probation has been revoked. He does not point to any new information that, had it been discovered by counsel, generates a reasonable probability that he would have rejected the plea agreement that kept him out of prison—his primary motivation. *See State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002) (noting an applicant's "conclusory claim of prejudice, that [he] 'was ready to insist on going to trial,' is not a sufficient assertion of prejudice"). We therefore affirm the denial of Slaughter's PCR application.

**B. Actual Innocence.**

In 2018, our supreme court authorized PCR applicants to raise freestanding claims of actual innocence even if they pleaded guilty. *Schmidt*, 909 N.W.2d at 795. Like ineffective-assistance, our actual-innocence standard is demanding—Slaughter must show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Id.* 797. To that end, he must show "factual innocence, not mere legal insufficiency." *Dewberry v. State*, 941 N.W.2d 1, 8 (Iowa 2019) (citation omitted).

Slaughter cannot meet this high bar. First considering the theft conviction, Slaughter insists that no witness could say Slaughter "took the phone from a place where it obviously belonged to somebody." Yet Slaughter overlooks the statements from the iPhone's owner, who stated he left his phone outside of his home, not abandoned in the middle of the street. Thus, had the matter gone to trial, the jury would be left to decide which version of events was more plausible. Because a jury could decline to find Slaughter or his mother credible, Slaughter has not proven factual innocence of third-degree theft.

Next considering the assault charge, Slaughter likewise has not shown clear and convincing evidence of innocence. Slaughter again insists there were "no witness[es] that could discredit [his] version of events," despite the victim expressly refuting his version of events. The victim relayed to officers that the two were fighting about money and Slaughter became enraged and assaulted her. There was no mention of a screwdriver in her statement, nor any screwdriver recovered on the scene. As with the theft charge, the jury would therefore be left to weigh

Slaughter and his mother's version against the victim's testimony.  Without more, Slaughter has not proven factual innocence of assault causing bodily injury.

Because Slaughter has not shown any breach of duty or resulting prejudice by counsel's investigation prior to Slaughter's acceptance of the plea agreement, nor has he proven actual innocence of either offense, we affirm the PCR court.

**AFFIRMED.**